UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **HATTIE VOORHIES and ROOSEVELT VOORHIES,** | * | **CIVIL ACTION** |
| **Plaintiffs,** | * | **NO. _____** |
| **VERSUS** | * | **SECTION \_\_\_\_** |
| **THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND d/b/a TULANE MEDICAL CENTER, UNIVERSITY HEALTHCARE SYSTEM, L.C., GENERAL ELECTRIC COMPANY through its GE HEALTHCARE DIVISION, HEALTHCARE INDEMNITY, INC. and VIRENDRA JOSHI, M.D.,** | * | **MAGISTRATE \_\_\_\_** |
| **Defendants.** | | |

## NOTICE OF REMOVAL

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

APPEARING through undersigned counsel pursuant to the provisions of 28 U.S.C. § 1332(a) and 1441, *et seq.*, General Electric Company (hereafter "General Electric"), a defendant, and respectfully removes from the Civil District Court for the Parish of Orleans, State of Louisiana, in which this case is now pending under the name and style *Hattie Voorhies and Roosevelt Voorhies versus The Administrators of the Tulane Education Fund d/b/a Tulane Medical Center, et al,* Civil Action No. 2011-12316, Division I, Section 14 (hereinafter referred to as the "State Court Action"), to the United States District Court for the Eastern District of Louisiana. In support of this Notice of Removal, Defendant avers as follows:

**A. Introduction**

> **This matter is properly removed because claims against the non-diverse defendants are premature in that they sound in medical malpractice and have not been brought before a medical review panel. This case is distinguishable from *Robiho v. Univ. Healthcare System, LLC*,[1] because the claims in this matter against the medical service provider defendants arise from "deviations of the accepted standard of medical care." As such, claims against these defendants are more clearly medical malpractice than those in *Robiho*.**

This matter is being removed by Defendant, General Electric, on the basis of diversity under 28 U.S.C. § 1332(a) because the only properly joined parties to this action have diverse citizenship and the jurisdictional amount in controversy is satisfied. Defendant, General Electric, is a citizen of a different state from the plaintiffs. The Administrators of the Tulane Educational Fund, University Healthcare System, L.C. and Dr. Virendra Joshi were improperly joined, because each is a qualified health care provider under the Louisiana Medical Malpractice Act, and is allegedly liable for medical malpractice, and, as such, is subject to review by a medical review panel prior to being made defendants. Additionally, Healthcare Indemnity, Inc., as the insurer of University Healthcare System, L.C., is also not a proper party under the protections afforded it through the Louisiana Medical Malpractice Act, specifically LSA-R.S. 40:1299.47(B)(1)(a)(i) ("No action against a health care provider covered by this Part, <u>or his insurer,</u> may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.").

This action is a civil action at law in which Plaintiff, Hattie Voorhies, alleges that she was exposed to the risk of infectious diseases, namely "HIV, Hepatitis B, Hepatitis C, and other infectious diseases" during the course of endoscopic examinations.[2] Plaintiff, Roosevelt

---

[1] *Robiho v. University Healthcare System, L.L.C.*, No. 11-1901 (E.D. La. Oct. 7, 2011), 2011 U.S. Dist. LEXIS 116621, (Judge Lance Africk) (Order granting Plaintiffs' Motion to Remand).
[2] *See* Plaintiffs' Complaint for Damages, ¶¶ 11 and 14, attached hereto as Exhibit 1.

Voorhies, as spouse of Hattie Voorhies, likewise, alleges that he, through the subsequent marital relations, was exposed to the risk of infectious diseases, namely "HIV, Hepatitis B, Hepatitis C, and other infectious disease."

Plaintiffs allege that The Administrators of the Tulane Educational Fund and University Healthcare System, L.C. (collectively referenced for ease as "Tulane Medical Center") owned and operated, by a partnership between them, Tulane Medical Center.  Plaintiffs alleged, among other particulars, that Tulane Medical Center negligently conducted the medical procedure at issue, with Plaintiffs specifically pleading that Tulane Medical Center deviated from the accepted standard of medical care.[3]

The "deviations from the accepted standard of medical care," as pled included: Negligently allowing the endoscope to enter Plaintiff's body; negligently preparing the surgical instrument; negligently cleaning and/or failing to clean the endoscopes; failing to provide Petitioner with adequately trained and/or supervised medical personnel; and "and all other acts of negligence or breaches of the standard of care to be proved at the trial and/or medical review of this matter."[4]

Plaintiffs allege that Dr. Virendra Joshi, likewise, deviated from the accepted standard of medical care, including, but not limited to, the following purported acts:  Negligently allowing the endoscope to enter Plaintiff's body; negligently preparing the surgical instrument, negligently cleaning and/or failing to clean the endoscopes; failing to provide Petitioner with adequately trained and/or supervised medical personnel; and "and all other acts of negligence or breaches of the standard of care to be proved at the trial and/or medical review of this matter."[5]

---

[3] *Id.* at ¶¶ 11, 18, 19 and 22.
[4] *Id.* at 18 and 19.
[5] *Id.* at ¶ 21.  In a separate paragraph within Plaintiffs' Complaint for Damages, Plaintiffs also allege that Dr. Joshi failed to advise of risk of infection and failed to obtain informed consent from the patient.  *Id.* at ¶ 12.

The same particulars alleged by Plaintiffs as to Tulane Medical Center and Dr. Virendra Joshi are alleged against General Electric Company.[6]

The plaintiffs named in this action are Hattie Voorhies and Roosevelt Voorhies, who claim residency in St. Martin Parish, Louisiana.[7]

The defendants named in the State Court Action are: The Administrators of the Tulane Educational Fund, a Louisiana non-profit corporation;[8] University Healthcare System, L.C., a Louisiana limited liability company;[9] General Electric Company, a New York corporation with its principal place of business in Connecticut;[10] Healthcare Indemnity, Inc., a foreign corporation;[11] and Dr. Virendra Joshi, upon information and belief, a Louisiana domiciliary. For purposes of this Notice of Removal, the states of citizenship of The Administrators of the Tulane Educational Fund, University Healthcare System and Dr. Virendra Joshi are irrelevant, as those parties were improperly joined (*see infra*).

This Court has recently addressed removal and remand in several similar cases. In one series of related cases that had been consolidated in Louisiana state court (unlike this one), some of the consolidated cases had been removed, while some remained in state court. *See, e.g., Robiho v. University Healthcare System, L.L.C.*, No. 11-1901 (E.D. La. Oct. 7, 2011), 2011 U.S. Dist. LEXIS 116621 (Order granting Plaintiffs' Motion to Remand). The plaintiffs filed motions to remand the removed cases. While the motions to remand were pending, the state court judge,

---

[6] *Id.* at ¶ 20.
[7] *See* Exhibit 1, introductory paragraph.
[8] *See* Entry for The Administrators of the Tulane Educational Fund, from Louisiana Secretary of State, Corporations Database, attached hereto as Exhibit "2."
[9] *See* Entry for University Healthcare System, L.C. from Louisiana Secretary of State, Corporations Database, attached hereto as Exhibit "3."
[10] *See* Entries for General Electric Co., from New York Secretary of State, Corporations Database and Connecticut Secretary of State, Corporations Database, attached hereto as Exhibit "4".
[11] Plaintiff has pled that Healthcare Indemnity, Inc. is "a foreign insurer licensed and authorized to provide insurance within the State of Louisiana." Exhibit 1, introductory paragraph.

4

the Honorable Paulette Irons, denied an exception of prematurity filed by the defendant, Tulane University Medical Center. *Id.*

In the first of these cases to be decided, *Robiho,* the Honorable Judge Lance Africk granted Plaintiffs' Motion to Remand. *Id.* Judge Africk noted that Judge Irons had denied the exception of prematurity, and that the coverage of the Louisiana Medical Malpractice Act is to be strictly construed. *Id.* Judge Africk then held that "[a]lthough that ruling is not binding, and may ultimately be overturned, the court's analysis of the *Coleman* factors provides a reasonable basis to believe that the claims do not fall within the 'strictly construed' coverage of the LMMA." *Robiho v. University Healthcare System, L.L.C.*, No. 11-1901 (E.D. La. Oct. 7, 2011), 2011 U.S. Dist. LEXIS 116621, at *7.

The state trial court's denial of the underlying Exception of Prematurity in *Robiho* is continuing through the appellate process. Writ of Review was denied by the Fourth Circuit Court of Appeal and review will be sought to the Louisiana Supreme Court.

General Electric respectfully asserts that the outcome of the appeal in *Robiho* and its related cases should not determine the outcome in this matter. The reasons why it should not will be detailed below, but primarily, this matter was pled as a completely different type of case in which the plaintiffs allege that each medical services provider "deviated from the accepted standard of medical care."[12] This is a pleading of medical malpractice.

Further distinguishing it from the Complaints in *Robiho* and related cases, the Voorhies' Complaint for Damages lacks any allegations of simple premises liability and focuses on sterilization issues, informed consent, as well as the endoscopic procedure itself.[13]

---

[12] *See* Exhibit 1, at ¶¶ 11, 18, 19 and 22.
[13] *See* Exhibit 1.

**B.     Complete diversity exists between the plaintiffs and the properly joined defendant, General Electric.**

On the face of the state court record, complete diversity of citizenship between the plaintiffs and all defendants would appear to be lacking.  However, the claims against The Administrators of the Tulane Educational Fund, University Healthcare System, L.C., and Dr. Virendra Joshi were subject to the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, *et seq.* and therefore review by a medical review panel is required before Plaintiffs could name these parties as defendants in a district court matter.  Likewise, University Healthcare System's insurer, Healthcare Indemnity, Inc., is afforded protection through the Louisiana Medical Malpractice Act. LSA-R.S. 40:1299.47(B)(1)(a)(i).

If the aforementioned parties are disregarded as improperly joined, complete diversity exists between the plaintiffs, citizens of Louisiana, and Defendant, General Electric, a citizen of New York.

   **1.     Improper Joinder**

The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Subsection (b) specifies that suits arising under federal law are removable without regard to the citizenship of the parties; all other suits are removable "only if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought."  An in-state defendant is improperly joined with other defendants, and should be disregarded for the purpose of determining diversity of parties, when there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against [that defendant]." *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004).

In comparable matters before this court in recent years, this Court has answered the question of whether defendants similar to The Administrators of the Tulane Educational Fund, University Healthcare System, L.C. and Dr. Virendra Joshi in this matter would be improperly joined if the plaintiff had not obtained the opinion of a medical review panel pursuant to the LMMA before filing suit.

In *Taylor, et al v. Ochsner Clinic Foundation, et al,* No. 2:11-cv-1926, U.S District Court for the Eastern District of Louisiana and *John Doe, et al v. Ochsner Clinic Foundation, et al,* No. 2:11-cv-2221, U.S. District Court for the Eastern District of Louisiana, this Court, the Honorable Judge Sarah Vance presiding, recently ruled against remand in a similar case where removal was based on diversity, conditioned upon a finding of improper joinder of the non-diverse defendants.  *See Taylor v. Ochsner Clinic Found.*, No. 11-1926 (E.D. La. Dec. 9, 2011), 2011 U.S. Dist. LEXIS 142122.  As in this case, the alleged liability of the non-diverse defendants was based upon their status as the medical service providers who administered endoscopies with instruments that were allegedly not properly sterilized.[14]  *Id.*  The plaintiffs in *Taylor* and *Doe* attempted, through artful pleading, to allege their case as one not arising under medical malpractice.  Judge Vance found that the "language and logic" of the LMMA, and a fair analysis under relevant jurisprudence, required a finding that the claims arose in medical malpractice.  *Id.* at *24.  Therefore, the LMMA required the plaintiffs to pursue review by a medical review panel before filing suit, the lawsuit against the non-diverse defendants was premature, and the matter was properly removed.  *Id.*

Further, as noted by the Court in *Taylor v. Ochsner Clinic Found.*, No. 11-1926 (E.D. La. Dec. 9, 2011), 2011 U.S. Dist. LEXIS 142122, at *9, Fifth Circuit case law demonstrates that

---

[14] The events at issue in *Taylor v. Ochsner Clinic Found.*, however, allegedly occurred at a different hospital than those at issue in this matter.

7

when a plaintiff has failed to satisfy administrative requirements before bringing suit against in-state defendants, those defendants are improperly joined, and their citizenship can be ignored for diversity purposes. *See Melder v. Allstate Corp.*, 404 F.3d 328, 331-32 (5th Cir. 2005) (upholding federal jurisdiction when a sole nondiverse defendant was joined before plaintiffs had pursued administrative remedies provided by the Louisiana Administrative Code, and finding "no reasonable basis" that plaintiffs might recover against that defendant); *Holder v. Abbott Labs, Inc.*, 444 F.3d 383, 387-88 (5th Cir. 2006) (finding improper joinder of in-state physicians sued before plaintiffs complied with the procedural exhaustion requirements of the National Childhood Vaccine Injury Act). Although the Fifth Circuit has not yet applied this reasoning to a case involving an alleged failure to comply with the LMMA's procedural requirements, other federal district courts in Louisiana have done so. *See Jones v. Centocor, Inc.,* 2007 U.S. Dist. LEXIS 84717, at *2-3 (E.D. La. 2007) (applying *Melder* and *Holder* and denying remand when a plaintiff joined an in-state defendant before presenting her claims to a medical review panel); *Senia v. Pfizer, Inc.*, 2006 U.S. Dist. LEXIS 32555, at *9-12 (E.D. La. 2006) (same).

> a. **A lawsuit against The Administrators of the Tulane Educational Fund, University Healthcare System, L.C., Healthcare Indemnity, Inc. and Dr. Virendra Joshi is premature before a decision is reached by a medical review panel.**

Plaintiffs have alleged that The Administrators of the Tulane Educational Fund, University Healthcare System, L.C. and Dr. Virendra Joshi "deviated from the Accepted Standard of Care" and "deviated from the accepted standard of medical care" in no less than four paragraphs of their Complaint for Damages.[15]

The Administrators of the Tulane Educational Fund, University Healthcare System, L.C. and Dr. Virendra Joshi, purportedly, based upon the pleading of Plaintiffs, committed medical

---

[15] *See* Exhibit 1, ¶¶ 17, 19, 21 and 22.

8

errors and/or deviations including, but not limited to: Negligently allowing the endoscope to enter Ms. Voorhies' body; negligently preparing the surgical equipment in the endoscopic procedure; failing to provide Ms. Voorhies adequately trained and/or supervised medical personnel; failing to comply with the rules, regulations, policies and procedures required when preparing surgical instruments prior to use; and other acts of negligence or breaches of the standard of care to be provided at the trial and/or medical review of this matter.[16] The same allegations are directed to General Electric.[17] Healthcare Indemnity, Inc. is sued in the capacity of an insurer of The Administrators of the Tulane Educational Fund and University Healthcare System, L.C.[18]

Thus, Plaintiffs are actually claiming deficiencies within the provision of medical care by defendants. The Administrators of the Tulane Educational Fund is a qualified healthcare provider as defined by the Louisiana Medical Malpractice Act (hereinafter "LMMA"), and, as such, is subject to protection afforded to qualified healthcare providers under that law. That status as a qualified healthcare provider is demonstrated by its certificate of enrollment in the Patients' Compensation Fund.[19] University Healthcare System, L.C. is a qualified healthcare provider as defined by the Louisiana Medical Malpractice Act (hereinafter "LMMA"), and, as such, is subject to protection afforded to qualified healthcare providers under that law. That status as a qualified healthcare provider is demonstrated by its certificate of enrollment in the Patients' Compensation Fund.[20] Dr. Virendra Joshi is also a qualified healthcare provider as defined by the Louisiana Medical Malpractice Act (hereinafter "LMMA"), and, as such, is

---

[16] *See* Exhibit 1, ¶¶ 18, 19 and 21.
[17] *See* Exhibit 1, ¶ 20.
[18] *See* Exhibit 1, ¶ 2.
[19] *See* Certificate of Enrollment in a Patients' Compensation Fund for The Administrators of the Tulane Educational Fund, attached hereto as Exhibit 5.
[20] *See* Certificate of Enrollment in a Patients' Compensation Fund for University Healthcare System, L.C., attached hereto as Exhibit 6.

subject to protection afforded to qualified healthcare providers under that law. That status as a qualified healthcare provider is demonstrated by Dr. Joshi's certificate of enrollment in the Patients' Compensation Fund.[21] Louisiana courts hold that such certificates are "competent evidence to establish a prima facie case for the applicability of the medical malpractice law regarding claims against the party identified on the certificate." *Roark v. Liberty Healthcare Sys., LLC*, 26 So. 3d 968, 973-974 (La. App. 2 Cir. 2009) (*citing* La. R.S. 13:3711, 3712; *Hill v. Brentwood Hosp.*, 480 So.2d 875 (La. App. 2d Cir. 1985); *Goins v. Texas Optical, Inc.*, 463 So.2d 743 (La. App. 4th Cir. 1985)).

In general, any conduct by a medical services provider complained of by a patient is properly within the scope of the LMMA if it can be said that it comes within the definitions of the Act, even though there are alternative theories of liability. See *Dominick v. Rehabilitation Hospital of New Orleans,* 97-2310 (La. App. 4 Cir. 4/15/98); 714 So. 2d 739, *Dinat v. Texada,* 09-665 (La. App. 3 Cir. 2/10/10), 30 So. 3d 1139; *Cashio v. Baton Rouge General Hospital,* 378 So.2d 182 (La. App. 1st Cir. 1979). As the Plaintiffs have apparently acknowledged in their repeated pleading that the defendants are purportedly liable for having "deviated from the accepted standard of medical care," the provisions of the LMMA apply and Plaintiffs' Complaint for Damages is premature.[22] See La. R.S. 40:1299.47

> The LMMA defines malpractice covered by the Act as follows:
>
> ***any*** unintentional tort or any breach of contract ***based on health care professional services rendered***, ***or which should have been rendered by a health care provider to a patient***, ***including failure to render services timely in the handling of a patient***, including loading and unloading of the patient and ***also includes all reasonable responsibilities of a health care provider arising from acts and omissions in the training or supervision of health care providers*** or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of

---

[21] *See* Certificate of Enrollment in a Patients' Compensation Fund for Dr. Virendra Joshi, attached hereto as Exhibit 7.
[22] *See* Exhibit 1, ¶¶ 18, 19, 20, 21, 22.

10

>prosthetic devices implanted in or used on or in the person of a patient. (Emphasis added).

La. R.S. 40:1299.41(A)(13) (emphasis added).

In *Cashio, supra,* the plaintiffs filed suit after a patient died from a staph infection contracted during coronary bypass surgery. The plaintiffs attempted to circumvent the LMMA by filing a lawsuit rooted upon the duty owed by a premises owner under La. C.C. art. 2317. Defendant filed an exception of prematurity. In reversing the trial court, the First Circuit held that the LMMA applied because "treatment" and thus "health care" includes furnishing a clean and sterile environment. *Cashio,* 382 So.2d at 184. The court rejected plaintiffs' argument that the LMMA did not apply because the hospital was being sued as a premises owner rather than health care provider and because the hospital could be strictly liable under La. C.C. art. 2317. Moreover, the Court specifically noted "a plaintiff cannot control the progress and procedure of his claim by semantically designating one capacity of two or more belonging to the defendant as the desired one when the statute requires a procedure if the claim fits within its definition." *Cashio,* 382 So.2d at 185. Plaintiffs in this case have actually alleged medical malpractice repeatedly, reciting various purported acts of the health care providers in deviating from the standard of medical care in their Complaint for Damages.[23] As in *Cashio,* this case is rooted in medical malpractice.

Aside from *Cashio,* other courts have found allegations centering on or arising out medical equipment issues constitute medical malpractice. *Renz v. Ochsner Foundation Hospital/Clinic,* 420 So.2d 1008 (La. App. 5th Cir. 1982); *Richardson v. Advanced Cardiovascular Systems, Inc.,* 865 F.Supp. 1210 (E.D. La. 1994). In *Renz,* the court held allegations pertaining to the malfunction of a medical life support system is part of "professional

---

[23] *See id.*

11

services rendered" and thus falls within the definition of malpractice. *Renz*, 420 So. 2d at 1010. In *Richardson,* the court found allegations concerning the failure of a balloon during an angioplasty procedure fit within the definition of "malpractice" and thus the plaintiffs' petition for damages was premature. This Court has likewise found the allegations at issue to be squarely within the definition of malpractice. *Taylor, et al v. Ochsner Clinic Foundation, et al,* No. 2:11-cv-1926, U.S District Court for the Eastern District of Louisiana; *John Doe, et al v. Ochsner Clinic Foundation, et al,* No. 2:11-cv-2221, U.S. District Court for the Eastern District of Louisiana.[24] Courts examining these issues focus on plaintiffs' allegations in their entirety and not any single allegation standing alone. *Taylor v. Christus Southwestern Louisiana,* 04-627 (La. App. 3 Cir 11/10/04); 886 So.2d 696.

The scope of acts and omissions that are "treatment related" include maintaining safeguards to ensure the safety of vulnerable patients, as well as providing medical care consistent with appropriate standards. *See Meseke v. St. Francis Medical Center*, 40,317 (La. App. 2 Cir. 10/26/05), 914 So. 2d 136, 139. (The scope of activities that were covered by the LMMA included responding to a patient's call for assistance and transporting him to the bathroom).

> b. **The *Coleman* factors warrant dismissal of Plaintiffs' claims against The Administrators of the Tulane Educational Fund, University Healthcare System, L.C., Healthcare Indemnity, Inc. and Dr. Virendra Joshi as premature.**

The Louisiana Supreme Court set forth six factors in *Coleman v. Dena,* 2001-1517 (La.1/25/02); 813 So. 2d 303, to assist courts in determining whether certain conduct by a

---

[24] Cf. *Robiho v. University Healthcare System, L.L.C.*, No. 11-1901 (E.D. La. Oct. 7, 2011), 2011 U.S. Dist. LEXIS 116621, *supra*.

qualified health care provider constitutes malpractice as defined under the LMMA.[25] The *Coleman* factors are:

a) whether the injury was treatment related or caused by dereliction of professional skill;

b) whether the wrong requires expert medical evidence to determine whether the applicable standard of care was breached;

c) whether the act involved assessment of the patient's condition;

d) whether the incident occurred in the context of the physician patient relationship or was within the scope of activities which a hospital is licensed to perform;

e) whether the injury would have occurred if the patient had not sought treatment; and

f) whether the tort was intentional.

*Coleman,* 813 So.2d at 315-316.

### i. As pled, the alleged injury was treatment related and/or caused by an alleged dereliction of professional skill.

Health care is defined in Louisiana Revised Statue 40:1299.41 as "any act or treatment performed or furnished, or which should have been performed or furnished by any health care provider for, to, or on behalf of the patient during a patient's medical care, treatment or confinement." One of the principal duties owed by a hospital to its patients is the furnishing of a clean and sterile environment. Indeed, the furnishing of such an environment is an integral component of the treatment which hospitals provide to their patients. *Cashio,* 378 So.2d at 184 (holding the definition of treatment includes "the furnishing of a clean and sterile environment for all patients"). There can be no dispute that allegations concerning a hospital's failure to

---

[25] The *Coleman* factors have recently been interpreted by this Court in a similar case involving claims for alleged improperly sterilized endoscopy equipment in *Taylor v. Ochsner Clinic Found.*, No. 11-1926 (E.D. La. Dec. 9, 2011), 2011 U.S. Dist. LEXIS 142122.

provide a clean and sterile environment, which is the essential allegation in this case, amount to an alleged dereliction of professional skill related to the treatment of patients.

> **ii. Expert medical evidence is needed to determine if appropriate standard of care was breached by The Administrators of the Tulane Educational Fund, University Healthcare System, L.C., Healthcare Indemnity, Inc. and Dr. Virendra Joshi.**

The standard of care required of a hospital in providing for sterility of its facility and the equipment utilized in endoscopic procedures is not common knowledge and cannot be inferred by a lay jury. This is evidenced by the fact that a lay jury would not be familiar with local, state and internal regulations and procedures for ensuring the sterility of a hospital and its equipment. Expert testimony will be needed to establish the standard of care in preparing for and in performing endoscopic procedures and whether there was a breach of the standard of care in the methods it utilized in performing the procedures at issue.

> **iii. Alleged act or omission involved assessment of the patient's condition.**

While one may argue a patient's contraction or fear of contraction of a serious illness, such as hepatitis or HIV, does not involve the assessment of a patient's condition, the allegations in Plaintiffs' Petition establish that the purported negligence and claimed damages occurred in conjunction with the treatment and assessment of Plaintiff, Hattie Voorhies, during the endoscopic procedure at issue.

> **iv. Alleged incidents took place in context of physician-patient relationship and within the scope of activities which a hospital is licensed to perform.**

The fourth *Coleman* factor is satisfied as there can be no dispute that the very procedure at issue in this case constitutes and is within the scope of activity which The Administrators of the Tulane Educational Fund, University Healthcare System, L.C., and Dr. Virendra Joshi are licensed to perform.

> **v. Any alleged injuries would not have occurred in this manner if the patient(s) had not sought treatment by The Administrators of the Tulane Educational Fund, University Healthcare System, L.C., Healthcare Indemnity, Inc. and Dr. Virendra Joshi.**

As pled in the Complaint, Plaintiff, Hattie Voorhies, was a purported patient at Tulane Medical Center receiving medical treatment, and all damages alleged stemmed from that treatment.[26] As such, common sense indicates that a claim based on failure to properly perform the endoscopic procedure, i.e. provide adequate care for patients, is specifically linked to treatment. *Coleman,* 813 So.2d at 315.

> **vi. The alleged tort was not intentional.**

The sixth and final Coleman factor is satisfied as Plaintiffs do not allege that defendants committed an intentional tort.

Applying all of the *Coleman* factors to the facts and allegations of this case establishes the plaintiffs are alleging unintentional torts based on the professional services that a hospital and physician are licensed to perform, or which should have been rendered by The Administrators of the Tulane Educational Fund, University Healthcare System and Dr. Virendra Joshi to their patients. As such, the Louisiana Medical Malpractice Act applies to this matter.

**C.     The jurisdictional amount for removal under 28 U.S.C. § 1332(a) is satisfied.**

In order for federal jurisdiction to be present under 28 U.S.C. § 1332(a), the amount in controversy for at least one plaintiff must exceed $75,000.  The defendant need only show by a

---

[26] *See* Exhibit 1, ¶¶ 3 and 5.

preponderance of the evidence that the jurisdictional amount is met. *Gibson v. Canal Ins. Co.*, 2004 U.S. Dist. LEXIS 4666 (E.D. La. Mar. 18 2004). A defendant can meet this burden either by showing that it is facially apparent from the nature and amount of the claims that they are likely to be above the requisite amount, or by setting forth the facts which would support a finding of the requisite amount. *Id.*

Under La. C.C.P. Art. 893(a)(1) as amended by Acts 2004, No. 334, **if a claim is for less than the requisite amount for the exercise of federal jurisdiction, plaintiff is <u>required</u> to so allege in the petition**. Here, the Petition for Damages contains no such limitation. This omission may be taken into account to tend to show that the claim is intended to exceed the federal jurisdictional amount. *See Haydel v. State Farm Mut. Auto. Ins. Co.*, 2008 U.S. Dist. LEXIS 122272 (M.D. La. June 10, 2008) at *21 ("this court has held that the failure to make such an allegation is not, in and of itself, determinative of the amount in controversy; however, such failure is entitled to 'some consideration' in making the jurisdictional amount determination").

Further the facts pled in the petition, taken as true for this purpose, support finding that the jurisdictional amount is met. Plaintiff alleges that they were negligently exposed to "HIV, hepatitis B, hepatitis C, and other infectious diseases."[27]

- In *Cotita v. Pharma-Plast, U.S.A., Inc.*, 974 F.2d 598 (5th Cir. 1992), while providing nursing services to an AIDS patent, a nurse was stuck by a syringe manufactured by the Defendant. The syringe, still in its sterile packaging, was missing the protective cap that normally covers the tip of the needle. Because of the presence of the patient's blood on the nurse's gloves at the time of the stick, the plaintiff feared exposure to the HIV virus. Although reduced by comparative fault, the jury award was in the amount of **$150,000.00.**

---

[27] Exhibit 1, ¶¶ 11,13 and 14.

16

- In *Emery v. Owens-Corporation*, 00-2144 (La. App. 1 Cir. 11/9/01), 813 So.2d 441, the jury awarded **$200,000** for his past, present & future mental anguish which included plaintiff's fear of contracting cancer as a result of his exposure to asbestos. Plaintiff had suffered asbestosis.

- In *David v. Our Lady of Lake Hosp., Inc.* 2002-1945 (La. App. 1 Cir. 6/27/03), 857 So.2d 529, the trial judge awarded plaintiff, who had contracted hepatitis C, **$632,000** for mental pain and suffering; and **$895,000** for emotional distress, fear of cancer, and loss of enjoyment of life.

- In *Dodson v. Community Blood Center*, 633 So.2d 252 (La. App. 1st Cir. 1993), the trial judge awarded **$275,000** due to contracting hepatitis C through blood transfusions. $50,000 was for loss of enjoyment of life and past pain and suffering, $75,000 was for past mental anguish, and $150,000 was for future mental anguish.

In light of the foregoing, once again, accepting Plaintiffs' allegations as true for this purpose, by a preponderance of the evidence, Plaintiffs have placed into controversy in excess of $75,000, satisfying the jurisdictional amount in controversy under 28 U.S.C. § 1332(a).

**D.     This removal is timely.**

This suit was filed on or about November 22, 2011, in the Civil District Court, in and for Orleans Parish, Louisiana. General Electric was served with citation on December 5, 2011.[28] Fewer than 30 days have passed since the date the initial pleadings for the State Court Action were filed, thus, this Notice of Removal was timely filed within the 30-day deadline set forth in 28 U.S.C. §1446(b).

**E.     Conclusion**

---

[28] *See* Citation to General Electric, attached hereto as Exhibit 8.

17

This action is one over which the district courts of the United States are given original jurisdiction. The value of the matter in controversy exceeds $75,000. There is complete diversity of citizenship between the plaintiffs and the properly joined defendant. The properly joined defendant is not a citizen of the State of Louisiana. The time within which removal must be effected has not expired.

A list of all parties, and all attorneys and the parties they represent, in the state court proceedings is attached to this Notice as Exhibit "9".

Under 28 U.S.C. §1446(a), the removing defendant must file "a copy of all process, pleadings and orders served upon such defendant or defendants in such action." A certified copy of the entire state court record has been obtained from the Clerk of Court for the Civil District Court for the Parish of Orleans, and it encompasses "all process, pleadings and orders served upon such defendant or defendants in such action." The record is attached as Exhibit 10.

Written notice of this removal has been served on counsel for Plaintiff and on counsel for all defendants by facsimile transmission, and by placement in the United States Mail, properly addressed and postage pre-paid.

A copy of this removal is being filed with the Clerk of Court for the Civil District Court, Parish of Orleans, State of Louisiana, by hand delivery.

ACCORDINGLY, the defendant, General Electric Company, asks that this matter proceed in the United States District Court for the Eastern District of Louisiana, as a matter properly removed.

        Respectfully Submitted,

        **COTTEN SCHMIDT & ABBOTT, L.L.P.**


        s/Charles H. Abbott
        **CHARLES H. ABBOTT**   (La.  Bar No. 27930)
        **BYRON D. KITCHENS**  (La.  Bar No. 25129)
        **RYAN C. WALLIS**       (La. Bar No. 28259)
        650 Poydras Street, Suite 2810
        New Orleans, Louisiana  70130
        Telephone:  504/568-9393
        Facsimile:   504/524-1933
        **Counsel for General Electric Company**