UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HATTIE VOORHIES, ROOSEVELT VOORHIES | CIVIL ACTION |
| VERSUS | NO: 11-3117 |
| THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, et al | SECTION: "A" (5) |

**ORDER AND REASONS**

There are three motions pending before the Court: A **Motion to Remand (Rec. Doc. 9)** filed by Plaintiffs Hattie Voorhies and Roosevelt Voorhies; and two **Motions to Dismiss Under Rule 12(b)(6) (Rec. Docs. 8, 11)** filed by Defendants Healthcare Indemnity Inc. ("HI") and University Healthcare System, L.C. d/b/a Tulane University Hospital and Clinic ("TUHC") and by the Administrators of the Tulane Educational Fund ("Administrators").

Though Defendants the Administrators have filed the aforementioned motion to dismiss **(Rec. Doc. 11)**, they support Plaintiffs' motion to remand with qualification **(Rec. Doc. 15)**. Plaintiffs have filed oppositions to both motions to dismiss **(Rec. Docs. 10, 18)**. Defendant General Electric Company ("GE") has filed an opposition to Plaintiff's motion to remand. **(Rec. Doc. 16)** The motions are before the court on the briefs without oral argument.[1] For the following reasons, Plaintiffs' **Motion to Remand (Rec. Doc. 9)** is **DENIED**, and Defendants' motions to dismiss **(Rec. Docs. 8, 11)** are **GRANTED**.

## I. BACKGROUND

This suit arises out of a patient's possible exposure to infectious disease allegedly caused by

---

[1] Oral argument has been requested in the current case. However, the Court is not persuaded that oral argument would be helpful in light of the issues presented.

Defendants' use of improperly disinfected medical equipment. Plaintiff Hattie Voorhies underwent two separate endoscopic procedures at Tulane Medical Center in New Orleans, Louisiana in 2010. On November 22, 2010, Dr. Virendra Joshi, who is also a defendant in the instant action, performed a diagnostic endoscopic ultrasound for a suspected ampullary adenoma. On December 20, 2010, Dr. Joshi performed an ampullectomy. For both procedures, Dr. Joshi used endoscopes provided by the Administrators and/or TUHC.

On January 3, 2011, Plaintiff Hattie Voorhies received a letter from Tulane Medical Center. The letter stated that the disinfection process for endoscopes used between October 7 and December 1, 2010 had not been performed at the appropriate temperature as recommended by the manufacturer. Before Plaintiff received said letter, she had marital relations with her husband, Plaintiff Roosevelt Voorhies. On November 22, 2011, Plaintiffs filed suit against the Administrators, TUHC, TUHC's liability insurer HI, Dr. Joshi, and GE in Orleans Parish Civil District Court.

**A. <u>Plaintiffs' Claims</u>**

Plaintiffs allege that the Administrators and TUHC owned and operated, by a partnership between them, Tulane Medical Center. In their petition, Plaintiffs allege that the Administrators and TUHC negligently conducted the medical procedure at issue, with Plaintiffs specifically pleading that the Administrators and TUHC "deviated from the accepted standard of medical care." They further claim that the Administrators and TUHC breached said standard of care by, *inter alia*: negligently allowing the endoscope to enter Plaintiff's body; failing to warn Plaintiff of the risk of infection associated with improper sterilization; failing to provide Plaintiff with adequately trained and/or supervised medical personnel; failing to obtain informed consent from Plaintiff prior to performing the procedures; failing to enforce policies and procedures when providing medical care; and failing to provide appropriate follow-up care. Plaintiffs allege that Dr. Joshi likewise deviated from the

accepted standard of medical care. The same particulars alleged by Plaintiffs as to the Administrators, TUHC, and Dr. Joshi are further alleged against GE.

Plaintiffs seek damages for, *inter alia*: past, present, and future medical expenses, mental anguish, physical pain and suffering, life-long medical monitoring, and fear and fright of contracting HIV, Hepatitis B, Hepatitis C, and/or other debilitating infectious diseases. Prior to filing civil suit, Plaintiffs also filed a complaint with the Patient's Compensation Fund pursuant to the Louisiana Medical Malpractice Act, La. R.S. § 40.1299.41 *et seq*. A medical review panel had not yet rendered an opinion regarding their complaint at the time of the filing of the instant suit.

**B. <u>GE's Notice of Removal</u>**

On December 20, 2011, GE filed a **Notice of Removal (Rec. Doc. 1)** on the basis of diversity under 28 U.S.C. § 1332(a), asserting that the only properly joined parties to this action have diverse citizenship and that the jurisdictional amount in controversy is satisfied.[2] According to GE, the Administrators, TUHC, and Dr. Joshi were improperly joined because each is a "qualified health care provider" under the LMMA, is allegedly liable for medical malpractice, and, as such, is subject to review by a medical review panel prior to being made defendants.

GE further argues that HI, as the insurer of TUHC, is also not a proper party based on the protections afforded it through the LMMA, specifically LSA-R.S. 40:1299.47(B)(1)(a)(i) ("No action against a health care provider covered by this Part, *or his insurer*, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.")(emphasis added). See also La. Rev. Stat. § 40:1299.47. At the time of

---

[2] With the exception of GE, which is a citizen of the state of New York, all Defendants are citizens of the state of Louisiana. Plaintiffs are citizens of the state of Louisiana. Neither the citizenship of the parties, their applicable status as healthcare providers, nor the satisfaction of the amount in controversy required to assert diversity jurisdiction are in dispute.

removal, GE avers, no panel had yet rendered an opinion regarding Plaintiffs' complaint, so no lawsuit against the in-state Defendants could be filed.[3] Therefore, the in-state Defendants were improperly joined and their citizenship need not be considered in determining diversity jurisdiction under 28 U.S.C. § 1441(a).

**C. Plaintiffs' Motion to Remand**

Plaintiffs have filed the instant motion to remand arguing that the in-state Defendants were in fact properly joined. In support of their motion, Plaintiffs first allege that because Roosevelt Voorhies was not a patient of the in-state Defendants, his claims lie outside of the ambit of the LMMA. Second, they argue that GE's removal was improper because it lacked the unanimous consent of the other Defendants. Third, Plaintiffs argue that remand is inevitable because Plaintiffs will rejoin the in-state Defendants once the medical review panel has rendered an opinion. Plaintiffs further seek costs and attorney fees associated with the motion.[4]

In its **Response in Opposition to Plaintiffs' Motion to Remand (Rec. Doc. 16)**, GE argues that the claims of a non-patient, such as Roosevelt Voorhies, which allegedly arise from purported negligence of a qualified health care provider to a patient, are derivative of the patient's claims and thus are subject to the mandatory provisions of the LMMA. GE cites the LMMA in asserting that all malpractice claims against healthcare providers must be reviewed by a medical review panel, and that a plaintiff cannot file suit until the an opinion is rendered by the panel. GE argues that if Plaintiffs'

---

[3] This argument also forms the basis for the motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by TUHC/HI and the Administrators. (**Rec. Docs. 8, 11**)

[4] The Administrators reiterate Plaintiffs' second argument in their **Memorandum in Support of Plaintiffs' Motion for Remand, with Qualification (Rec. Doc. 15)**, asserting that GE's removal of the instant case lacked unanimous consent. However, the Administrators memorandum specifically rejects any assertion that Plaintiffs' claims are not subject to the Louisiana Medical Malpractice Act.

claims are determined to be medical malpractice claims, then the instant suit against the in-state healthcare providers is premature. GE further argues that a removing party need not seek the consent of a co-defendant which the removing party contends is improperly joined. Finally, GE argues that removal was timely, and that costs and attorneys fees should be denied because GE had an objectively reasonable basis for removal.

## II. LAW

### A. Standard for Improper Joinder[5]

Generally, a defendant may remove a civil action filed in state court if the federal court to which it is removed could have exercised original jurisdiction over the action. See 28 U.S.C. § 1441(a). The removing defendant bears the burden of demonstrating that the federal court has jurisdiction. Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995).

Federal courts have original jurisdiction over actions where the amount in controversy, exclusive of costs and interest, exceeds $75,000.00 and complete diversity of citizenship exists between all plaintiffs and defendants. See 28 U.S.C. § 1332(a); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). While a federal court must remand a civil action to state court if it lacks subject-matter jurisdiction at any time before final judgment is entered, 28 U.S.C. § 1447(c), for the purpose of determining whether the parties are completely diverse, a court must examine the parties' citizenship at the time the lawsuit is commenced. Harris v. Black Clawson Co., 961 F.2d 547, 549 (5th Cir. 1992) ("Whether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time suit was

[5] Traditionally the term used to refer to these situations was "fraudulent joinder." The Fifth Circuit now refers to "fraudulent joinder" as "improper joinder." See Smallwood v. Illinois Cent. R .R. Co., 385 F.3d 568, 571 n.1 (5th Cir.2004)( en banc ), cert. denied by, Illinois Cent. R. Co. v. Smallwood, 544 U.S. 992, 125 S.Ct. 1825 (4/18/2005).

filed.") (citation omitted); Seafoam, Inc. v. Barrier Sys., Inc., 830 F.2d 62, 67 (5th Cir. 1987) ("It is well established law that the jurisdiction of a federal court sitting in diversity is determined as of the time of filing of the complaint.").

When a non-diverse party is joined as a defendant, a federal court lacks subject-matter jurisdiction and the case may not be removed from state court. However, a defendant may remove the case if it can show that the non-diverse party was improperly joined. Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc). A removing defendant may establish that a non-diverse defendant was improperly joined by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant. Id. (citing Travis v. Irby, 326 F.3d 644, 646–47 (5th Cir. 2003)). As GE has not alleged actual fraud in Plaintiffs' pleading of jurisdictional facts, the Court will consider only the second test for improper joinder.

Because the doctrine of improper joinder is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one. Id. In order to show that a plaintiff is unable to establish a cause of action against the non-diverse defendant, a defendant claiming improper joinder must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." C.S. Gaidry, Inc. v. Union Oil Co. of Cal., 2009 WL 2765814, at *2 (E.D.La. Aug.27, 2009) (Vance, J.) (quoting Smallwood, 385 F.3d at 573).

The Court may use two different methods to assess the viability of a plaintiff's claim against the non-diverse party. Id. First, the Court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under

state law against the in-state defendant." Id. (quoting Smallwood, 385 F.3d at 573). Such analysis will typically be determinative. Id. Nevertheless, if it is apparent that the plaintiff has "misstated or omitted" determinative facts that would establish whether joinder was proper or improper, "the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." Id. (quoting Smallwood, 385 F.3d at 573). In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." Id. (quoting Travis v. Irby, 326 F.3d 644, 649 (5th Cir. 2003)). Additionally, the Court must resolve all ambiguities of state law in favor of the non-removing party. Id.

**B. 12(b)(6) Standard**

The Administrators and HI/TUHC's motions to dismiss Plaintiffs' claims against the in-state Defendants is governed by the standard applicable under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949; Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232–33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. Iqbal, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. Id. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. Twombly, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. Lormand, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, Twombly, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, Jones v. Bock, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); Carbe v. Lappin, 492 F.3d 325, 328 n. 9 (5th Cir. 2007), the claim must be dismissed.

**C. The LMMA**

The Louisiana Legislature enacted the Medical Malpractice Act in 1975 in response to a perceived medical malpractice insurance "crisis." Hutchinson v. Patel, 637 So.2d 415, 419 (La.,1994)(citations omitted). The legislature intended the Act to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public. Id. To those ends, the Act confers upon qualified health care providers two principal advantages in actions against them for malpractice. First, the scheme limits the total amount recoverable for all malpractice claims for injuries or death to a patient to $500,000.00 and limits the liability of a qualified health care provider for malpractice claims of any one patient to $100,000.00. L.R.S. 40: 1299.42B(1) and (2). If the amount due a claimant exceeds $100,000.00, the excess shall be paid from the Fund, up to the $500,000.00 amount recoverable on a malpractice claim. L.R.S. 40:1299.42B(3). Second, no action for malpractice against a qualified health care provider or his or her insurer may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint,

unless the parties agree to waive this requirement. La.R.S. 40:1299.47.

The LMMA applies solely to claims "arising from medical malpractice." Id. (citing La.R.S. 40:1299.41(I); Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La. 1992)). The Act defines "malpractice" as follows:

> (8) "Malpractice" means any *unintentional tort* or any breach of contract based on *health care* or professional services rendered, or which should have been rendered, by a *health care provider*, to a *patient*,[6] including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

La.R.S. 40:1299.41(A). (emphasis added) The Act further defines"tort" and "health care" as follows:

> (7) "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
>
> ....
>
> (9) "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.

La.R.S. 40:1299.41(A).

The LMMA creates an administrative procedure which requires that all claims be submitted through a medical review panel prior to filing a lawsuit in state or federal court. La.Rev.Stat. § 40:1299.41, *et seq*; See also Hidalgo v. Wilson Certified Express, Inc., 676 So.2d 114, 116–17 (La.App. 1st Cir. 1996). Louisiana Revised Statute § 40:1299.47(B)(1)(a)(i) provides:

> No action against a health care provider ... may be commenced in any court before the

---

[6] It is undisputed that the in-state Defendants qualify as "health care providers" under the LMMA, and that Mrs. Voorhies qualifies as a "patient."

> claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section [of the LMMA].

Absent waiver of this requirement by the parties, a malpractice suit brought before a medical review panel's final ruling is subject to dismissal as premature. See Bennett v. Krupkin, 814 So.2d 681, 685 (La.App. 1st Cir. 2002); La.Code Civ. Proc. Ann. art. 933 ("If the dilatory exception pleading prematurity is sustained, the premature action, claim, demand, issue or theory shall be dismissed.").

Further, Fifth Circuit case law demonstrates that when a plaintiff has failed to satisfy administrative requirements before bringing suit against in-state defendants, those defendants are improperly joined, and their citizenship can be ignored for diversity purposes. See Melder v. Allstate Corp., 404 F.3d 328, 331–32 (5th Cir. 2005) (upholding federal jurisdiction when a sole nondiverse defendant was joined before plaintiffs had pursued administrative remedies provided by the Louisiana Administrative Code, and finding "no reasonable basis" that plaintiffs might recover against that defendant); Holder v. Abbott Labs., Inc., 444 F.3d 383, 387–88 (5th Cir. 2006) (finding improper joinder of in-state physicians sued before plaintiffs complied with the procedural exhaustion requirements of the National Childhood Vaccine Injury Act).

Although the Fifth Circuit has not yet applied this reasoning to a case involving an alleged failure to comply with the LMMA's procedural requirements, other federal district courts in Louisiana have done so. See Jones v. Centocor, Inc., 2007 U.S. Dist. LEXIS 84717, at *2–3, 2007 WL 4119054 (E.D.La., Nov. 15, 2007) (applying Melder and Holder and denying remand when a plaintiff joined an in-state defendant before presenting her claims to a medical review panel); Senia v. Pfizer, Inc., 2006 U.S. Dist. LEXIS 32555, at *9–12, 2006 WL 1560747 (E.D.La., May 23, 2006) (same). Thus, if the Court finds that Plaintiffs' claims against the Administrators, TUHC, HI, and Dr. Joshi required review by a medical review panel, these in-state defendants are to be dismissed, and

GE is entitled to remain in federal court.

However, the LMMA's requirement of prior review by a medical review panel "applies only to 'malpractice;' all other tort liability on the part of a qualified heath care provider is governed by general tort law." Coleman v. Deno, 813 So.2d 303, 315 (La.2002). In order to determine whether an alleged action constitutes "medical malpractice" and is subject to the provisions of the LMMA, the Louisiana Supreme Court has utilized the following list of factors:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
>
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
>
> (3) whether the pertinent act or omission involved assessment of the patient's condition,
>
> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
>
> (5) whether the injury would have occurred if the patient had not sought treatment, and
>
> (6) whether the tort alleged was intentional.

Id. at 315–16. When applying the Coleman factors, the Louisiana Supreme Court recognizes that "the LMMA's limitations on the liability of health care providers are special legislation in derogation of the rights of tort victims, and as such, the coverage of the act should be strictly construed." Blevins v. Hamilton Med. Ctr., Inc., 959 So.2d 440, 444 (La. 2007) (citing Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La. 1992)). Once it is determined that a claim falls within the purview of the LMMA, however, it is subject to the provisions of the LMMA even though alternative theories of liability are possible. Dading v. Goodyear Tire & Rubber Co., 2005 WL 2037450 (E.D.La., July 25, 2005)(citing Rogers v. Synthes, Ltd., 626 So.2d 775, 777 (La.App. 2d Cir. 1993)(additional citations

omitted)).

## III. ANALYSIS

### A. Plaintiffs' Claims are Subject to the LMMA

The parties do not contest the fact that the in-state Defendants are "qualified health providers" within the scope of the Act. Therefore, the first issue before the Court is whether the claims against the defendants constitute "malpractice" and must therefore be brought before a medical review panel prior to filing suit.

The Court notes that two courts in this circuit have dealt with facts very similar to those of the present case, and have arrived at different conclusions. In Robiho v. University Healthcare System, L.L.C., 2011 WL 4747446 (E.D.La., Oct. 7, 2011), Judge Lance M. Africk granted a motion to remand filed by the plaintiffs, a class of persons exposed to infectious diseases while undergoing endoscopic treatment under the care of TUHC. GE, also a defendant in Robiho, filed a motion to stay the motion to remand, which was denied. Judge Africk applied the six Coleman factors for determining whether conduct constitutes malpractice under the LMMA, and determined that, when considered in the light most favorable to the plaintiffs, there was a reasonable basis for believing that TUHC could proceed without prior review by a medical review panel.

However, Judge Sarah S. Vance reached a different conclusion in Taylor v. Ochsner Clinic Foundation, 2011 WL 6140885 (E.D.La., Dec. 9, 2011). As in Robiho and the instant case, Taylor involved plaintiffs who filed suit against health care providers in state court based on the providers' alleged failure to disinfect endoscopes at the temperature recommended by the manufacturer. Again, as in the present matter, defendant GE removed the case to federal court based on diversity jurisdiction; plaintiffs subsequently filed a motion to remand, which defendants opposed, and defendants filed a motion to dismiss based on prematurity.

Judge Vance held that the LMMA "unambigiously applie[d]" to the claims made in Taylor. Id. at *5. The Court in Taylor found that this allegation constituted a claim for malpractice under the statute, and cited state court cases in which plaintiffs were exposed to infection or disease as a result of improper sanitation in a hospital setting. Id. (citing Cashio v. Baton Rouge General Hospital, 378 So.2d 182, 183 (La.App. 1st Cir. 1979)(patient died from a staph infection allegedly acquired during coronary bypass operation; court classified claim as one of malpractice under the LMMA), Esposito v. Ethicon, Inc., 2011 U.S. Dist. LEXIS 76752, 2011 WL 2883067 (M.D.La. 2011) (plaintiff sued manufacturers and distributors of contaminated suture material used in surgery; court classified claim as one of malpractice under the LMMA). The Court further applied the six Coleman factors to the facts of the case, and found that five of the six conditions were satisfied. Judge Vance noted that Judge Africk had come to the opposite conclusion in a similar case also involving a hospital's negligent sterilization of endoscopes, but respectfully disagreed with that opinion.

The Court notes the underlying factual similarities between Robiho, Taylor, and the instant case, but finds that the present matter differs markedly from those cases in that here, it is apparent from the face of the complaint that Plaintiffs' claims are rooted in medical malpractice and are thus subject to the provisions of the LMMA. In Robiho, the plaintiffs alleged "negligence" based on failure to disinfect the endoscope at the proper temperature, which failure exposed the plaintiffs to infection and disease. The plaintiffs in Taylor made the same claims, and further alleged a failure to institute proper sterilization protocol.

In the present case, Plaintiffs admit that the claims set forth in their petition fall within the scope of the LMMA. Plaintiffs prefaced each set of allegations in their complaint against the in-state Defendants as "deviat[ions] from the accepted standard of *medical care*." (Emphasis added) The complaint lacks any allegations of simple premises liability and instead focuses on sterilization

issues, informed consent, and the endoscopic procedure itself. The petition specifically alleges that the Administrators' and/or TUHC's nursing staff, who are health care providers under the LMMA, "certified the endoscopes for safe use prior to said procedures," and states that each in-state Defendant failed to "enforce the policies and procedures of Tulane [the Administrators], UHS [TUHC], the endoscopes' manufacturer, or GE...when providing *medical care*." (Emphasis added)

In their opposition to Defendants' motion to dismiss, Plaintiffs explicitly "agree that the claims asserted by Hattie Voorhies fall within the realm of medical malpractice." Plaintiffs' motion to remand admits that it "may be true" that the claims asserted by Hattie Voorhies are subject to the LMMA, but argues that the claims asserted by her husband Roosevelt Voorhies do not fall under the statute. Plaintiffs argue that Mr. and Mrs. Voorhies' claims are distinct and that, should Mrs. Voorhies' claims be dismissed as premature, those of Mr. Voorhies should be allowed to proceed. The Court is not persuaded by this argument.

The claims of Roosevelt Voorhies are derivative of the medical malpractice claims of his wife, Hattie Voorhies, and are thus similarly subject to the LMMA. Plaintiffs compare the instant case to that of Hutchinson v. Patel, 637 So.2d 415 (1994) and suggest that only claims made by patients fall under the LMMA. However, the facts of Hutchinson are distinguishable from those presently at issue. In Hutchinson, the plaintiff's estranged husband was a psychiatric patient of the defendant. While the husband was still a patient of the defendant, he shot and injured the plaintiff. In her suit against the defendant, the plaintiff alleged failure to warn or take reasonable precautions to protect the plaintiff against the threat of physical violence which her husband had communicated to the defendant. The court interpreted the LMMA to exclude "non-patient claims which do not arise from injuries to or death of a patient." Id. at 426.

The court in Hutchinson noted the fact that the non-patient plaintiff's claim was not based on

any negligent act of the psychiatrist in the treatment of her husband, but was instead a cause of action for a breach of duty allegedly owed by the psychiatrist directly to the plaintiff. Id. at 423-424. The court therefore found that plaintiff's claim did not fall under the LMMA, and specified that the Act applies "exclusively to claims arising from injuries to or death of a patient," whether those claims are brought by the patients themselves, by their representatives on the patient's behalf, or by "*other persons with claims arising from injuries to or death of a patient*." Id. at 428. (Emphasis added)

Indeed, claims of a non-patient can still fall under the LMMA:

> [T]he mere fact that [plaintiff] is a non-patient is not the decisive factor in determining whether the claim comes under the Medical Malpractice Act. All claims against healthcare providers for malpractice must first go through the [LMMA] procedure, *regardless of whether the claimant is a patient or a non-patient.*

Bolden v. Dunaway, 727 So.2d 597, 601 (La.Ct.App.1 Cir. 1998)(citing Thomas v. LeJeune, Inc., 501 So.2d 1075, 1077 (La.App. 2d Cir. 1987), overruled in part by Hutchinson v. Patel, 93–2156 at pp. 13–15; 637 So.2d at 425–6)(emphasis added)); see also Jones v. Scriber, 716 So.2d 905, 906 (La.App. 2 Cir. 1998)("The non-patient claim in Thomas...arose from injuries to a patient and would be governed by the Act even under the reasoning in Hutchinson.")

The damages claimed by Mr. Voorhies, a non-patient, are based on the alleged failure of the health care provider to render adequate medical care to his wife, a patient. Considering the facts of the instant case, Mr. Voorhies' claim is clearly derivative of Mrs. Voorhies' claim. Thus, Mr. Voorhies' claim is one for "malpractice" as defined in the LMMA even though he is a non-patient. See Id.

The Court finds that, unlike in Robiho and Taylor, in the instant case it is admitted in the pleadings that Plaintiffs' claims are based in medical malpractice and not general tort liability and

that these claims are therefore subject to the provisions of the LMMA.[7] As a matter of law, where, as here, plaintiffs file a malpractice suit against a qualified health care provider prior to obtaining a ruling by a medical review panel, the case must be dismissed as premature. See Bennett v. Krupkin, 814 So.2d 681, 685 (La.App. 1st Cir.2002); La.Code Civ. Proc. Ann. art. 933 ("If the dilatory exception pleading prematurity is sustained, the premature action, claim, demand, issue or theory shall be dismissed."); see also Bodin v. Delta Towing, No. 02-0295, 2003 U.S. Dist. LEXIS 1362, at *8 (E.D.La. Jan. 29, 2003) ("When a malpractice claim against the qualified health care provider covered in the LMMA is brought in a court action before the claim has been presented to a medical review panel under the LMMA, the claim must be dismissed as premature.")

**B. Unanimity Not Required in Cases of Improper Joinder**

Plaintiffs further argue that GE's removal is improper because no other Defendant has joined in or consented to the removal. The Fifth Circuit has held that all properly joined and served defendants must consent to the removal of an action either by joining in the motion or by timely filing written consent to the removal into the record. Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of North Am., 841 F.2d 1254, 1262-63 (5th Cir. 1988). However, as is usually the case, this "Rule of Unanimity" has its exceptions.

The most often relied-upon exception to the requirement of unanimity of consent is that a "...

---

[7] Given the plain language of the petition and Plaintiffs' own admission that Mrs. Voorhies' claims fall under the LMMA, the Court does not find it necessary to apply the Coleman factors to the present case. See Ellis v. Ethicon, Inc., 2010 WL 1251640 (M.D.La. Feb.19, 2010) (Riedlinger, M.J.) (Brady, J., report and recommendations adopted March 24, 2010)(Plaintiff argued that the LMMA did not apply, but in her petition to establish a medical review panel alleged that "the facts in this case present a claim for medical malpractice based on the defendant's negligence and breach of contract;"Court determined that the plaintiff's claims fell under the LMMA without applying the Coleman factors); see also Esposito v. Ethicon, Inc., 2011 WL 2883067 (M.D.La., June 13, 2011) (Riedlinger, M.J.)(Brady, J. report and recommendations adopted July 15, 2011).

removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined." Rico v. Flores, 481 F.3d 234, 239 (5th Cir. 2007). Application of the unanimity rule to improperly or fraudulently joined defendants "would be nonsensical." Jernigan v. Ashland Oil Inc., 989 F.2d 812, 815 (5th Cir. 1993). For this reason, the Court rejects Plaintiffs' and the Administrators' argument that a lack of unanimity among the defendants regarding removal necessitates remand.

**C. Potential for Future Remand is Not Determinative of the Present Issue**

In their motion to remand, Plaintiffs state that, regardless of the outcome of the medical review panel's review of their pending complaint, they intend to proceed against the healthcare defendants in a court of law. They argue that, if this matter remains before this court at that time, then the suit will be amended to add the healthcare providers as defendants, diversity will be destroyed, and the Court must remand the case. The Court need not address this hypothetical future situation, but must instead determine whether it has jurisdiction at this present time.

The citizenship of a party at commencement of the action controls determination of diversity jurisdiction. 28 U.S.C.A. § 1332(a)(1). "Diversity jurisdiction requires complete diversity between parties, however such diversity cannot be destroyed by a plaintiff fraudulently joining a non-diverse defendant." McKee v. Kansas City Southern Ry. Co., 358 F.3d 329, 333 (5th Cir. 2004) (citing Hart v. Bayer Corp., 199 F.3d 239, 2423 (5th Cir. 2000)). In this case, the inability of the plaintiffs to establish a cause of action against the non-diverse defendants in state court means that the non-diverse defendants have been improperly joined and their presence may be ignored. The case against diverse defendant GE may therefore proceed in federal court, but the pending claims against the in-state defendants must be dismissed as premature.

## IV. CONCLUSION

After review of the allegations of plaintiffs' petition in the present case, as well as applicable statutory authority and all pertinent jurisprudence, we find that the record supports Defendants' contention that Plaintiffs' claims fall within the scope of the LMMA. We reach the conclusion that the allegations as set forth by Plaintiffs must be presented to a medical review panel prior to instituting the present litigation.

Accordingly;

**IT IS ORDERED** that Plaintiffs' motion to remand **(Rec. Doc. 9)** is **DENIED**.

**IT IS FURTHER ORDERED** that HI/TUHC's and the Administrators' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure **(Rec. Docs. 8, 11)** are **GRANTED**. Plaintiffs' claims against in-state Defendants HI, TUHC, the Administrators, and Dr. Joshi are **DISMISSED WITHOUT PREJUDICE**.

This 10th day of May, 2012.

Judge Jay C. Zainey
United States District Court